**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| POLICE OFFICER JOSEPH AL-AYOUBI,<br><br>               Plaintiff,<br><br>         v.<br><br>CITY OF HACKENSACK, CHIEF OF POLICE CHARLES KEN ZISA, in both his professional and personal capacity, CAPTAIN THOMAS SALCEDO, in both his professional and personal capacity, and CAPTAIN DANILO GARCIA, in both his professional and personal capacity,<br><br>               Defendants. | Civil Action No. 2:10-cv-02592 (SDW) (MCA)<br><br><br>**OPINION**<br><br><br>December 28, 2011 |

**WIGENTON**, District Judge.

Before the Court are the individual motions of defendants Chief of Police Charles Ken Zisa ("Zisa" or "Chief Zisa"), Captain Thomas Salcedo ("Salcedo"), and Captain Danilo Garcia ("Garcia") (collectively, "Individual Defendants" or "Defendants") to dismiss claims in plaintiff Police Officer Joseph Al-Ayoubi's complaint ("Plaintiff" or "Al-Ayoubi") pursuant to Federal Rule of Civil Procedure 12(b)(6).  The City of Hackensack ("City"), another defendant, also filed a motion for judgment on the pleadings, or in the alternative, motion for summary judgment ("City's Motion").

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332 and 1343(a)(3), and 42 U.S.C. 1983.  The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  Venue is proper under 28 U.S.C. § 1391.

This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated below, this Court **GRANTS** Zisa's motion to dismiss ("Zisa's Motion"); **GRANTS** Salcedo's motion to dismiss ("Salcedo's Motion"); **GRANTS** Garcia's motion to dismiss ("Garcia's Motion"); and **GRANTS IN PART AND DENIES IN PART** the City's Motion.

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiff is a police officer with the Hackensack New Jersey Police Department. (Am. Compl. ¶ 7.)

In 2009, while Salcedo was conducting an Internal Affairs Unit investigation into Lieutenant Vincent Riotta ("Riotta"), Riotta provided Salcedo with several recorded conversations on compact discs. (Def. Salcedo's Br., Ex. B at 1.) Riotta, Sergeant Scott Sybel ("Sybel"), and Plaintiff's conversations were considered to implicate them in possible steroid use. (*Id.* at 1-2.) On June 4, 2009, Salcedo provided the transcribed conversations to Chief Zisa via an Interoffice Communication. (*Id.*) In this communication, Salcedo relayed his belief that "reasonable suspicion" existed to compel urine samples from Riotta, Sybel, and Plaintiff. (*Id.* at 3.)[1]

On June 19, 2009, while on vacation, Plaintiff was ordered to undergo a urine test. (Am. Compl. ¶ 15.) He was informed that the test was based on reasonable suspicion of drug use. (*Id.*) Salcedo and Garcia allegedly "carried out" the urine test. (*Id.*)

---

[1] The Law Enforcement Drug Testing Policy states:

> Urine specimens shall be ordered from a sworn law enforcement officer when there exists *reasonable suspicion* to believe that the officer is illegally using drugs. Urine specimens shall not be ordered from an officer without the approval of the county prosecutor or the chief executive officer of the officer's agency.

ATTORNEY GENERAL, DIVISION OF CRIMINAL JUSTICE, STATE OF NEW JERSEY, ATTORNEY GENERAL'S LAW ENFORCEMENT DRUG TESTING POLICY § II(c)(1) (2001) (emphasis added), *available at* http://www.nj.gov/oag/dcj/agguide/drugtest2001.pdf; (*see also* Def. Salcedo's Br., Ex. B at 2–3).

When the test results returned, Salcedo announced to Plaintiff in front of Garcia and others within the department that the "urine came back dirty" and that Plaintiff had "tested positive for steroids."  (Am. Compl. ¶ 15.)  Plaintiff asserts that these public statements and written criminal complaints were defamatory and were meant to ruin his personal and professional life.  (*Id*. ¶ 15.)  On July 15, 2009, Plaintiff was criminally charged.  (Am. Compl. ¶ 16.)  Thereafter, Plaintiff was suspended from the force.  (*Id.*)  On September 24, 2009, the criminal charges against Plaintiff were dismissed with prejudice.  (*Id*. ¶ 17.)

On May 20, 2010, Plaintiff filed a complaint against the Defendants, for various civil rights violations, including conspiracy to violate constitutional rights, as well as intentional infliction of emotional distress, negligence/palpably unreasonable conduct, malicious abuse of process, false arrest and false imprisonment, and defamation (libel and slander). (*See generally* Compl.)  On June 23, 2010, Zisa and the City of Hackensack filed a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6).  On August 12, 2010, this Court granted the motion in part, denied in part, and stipulated in part.  An order to that effect was filed on August 16, 2010.

On August 24, 2010, Plaintiff filed an amended complaint ("Amended Complaint"), adding a cause of action based on a violation of the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-2, and adding Salcedo and Garcia as defendants.  The Amended Complaint contains the following claims: 1) violation of 42 U.S.C. § 1983; 2) violation of constitutional right of due process; 3) violation of New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2; 4) conspiracy to violate state and federal civil rights; 5) intentional infliction of emotional distress; 6) gross negligence/palpably

3

unreasonable conduct; 7) malicious abuse of process, false arrest and false imprisonment; 8) defamation—libel and slander.  On May 13, 2011, Zisa's Motion was filed to dismiss Count I (violation of 42 U.S.C. § 1983), Count II (violation of constitutional right of due process),[2] and Count III (violation of NJCRA).  On May 27, 2011, Salcedo's Motion was filed to dismiss the Amended Complaint, but specifically Count I (violation of 42 U.S.C. § 1983), Count III (violation of NJCRA), and Count IV (conspiracy to violate state and federal civil rights).[3]  On June 3, 2011, Garcia's Motion was filed to dismiss all claims (Counts I through IX)[4] pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  On June 23, 2011, the City filed its motion for judgment on the pleadings, or in the alternative, motion for summary judgment.

**LEGAL STANDARD**

The adequacy of pleadings is governed by Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief."  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted) ("Rule 8(a)(2)

---

[2] The Court will not address Count II in this Opinion regarding Zisa or the City as the claim was dismissed against the City of Hackensack and Zisa by order dated August 16, 2010, and will apply to the Amended Complaint.  (Order dated Aug. 16, 2010; City's Br. 3.)  Plaintiff does not dispute dismissal of Count II. (*See* Pl.'s Opp'n  to Zisa Br. 4.)

[3] Defendant Salcedo's Motion is entitled "Defendant Captain Thomas Salcedo's Brief in Support of Motion to Dismiss the First Amended Complaint", but his proposed order and brief only refer to the dismissal of Counts I, III, and IV, and will be reviewed as such.  (*See* Def. Salcedo's Br. at 10.)

[4] Garcia's Motion is to dismiss all counts against him: Counts I (violation of 42 U.S.C. § 1983 (2006)), III (violation of NJCRA), IV (conspiracy to violate state and federal civil rights), V (intentional infliction of emotional distress), VI (gross negligence/palpably unreasonable conduct), VIII (malicious abuse of process, false arrest and false imprisonment), and IX (defamation—libel and slander).

still requires a 'showing' rather than a blanket assertion, of an entitlement to relief."); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).  As the Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citations omitted) (quoting *Twombly*, 550 U.S. at 556–57, 570).  Determining whether allegations in a complaint are plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 1950. If the "well-pleaded facts do not permit the court to infer more than the mere possibility

of misconduct," the court must grant a motion to dismiss for failure to show that the pleader is entitled to relief as required by Rule 8(a)(2). *Id.*

To the extent that defendants' motions are to be considered under Fed. R. Civ. P. 12(c), our courts have noted that "a motion to dismiss for failure to state a claim under Rule 12(c) is identical to one filed under Rule 12(b)(6), except Rule 12(c) allows for the motion to be filed after the filing of an answer, while Rule 12(b)(6) allows for the motion to be made in lieu of an answer." *Wellness Pub. v. Barefoot*, No. 02-3773, 2008 WL 108889, at * 6 (D.N.J. Jan. 9, 2008); *see also* Fed. R. Civ. P. 12(h)(2)(B). In either instance, a court is to use the same standard in evaluating the motions. *Reinbold v. U.S. Post Office*, 250 Fed. Appx. 465, 466 (3d Cir. 2007) (citing *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991)).

**DISCUSSION**

**I.       Motion to Dismiss by Chief Zisa**

Plaintiff asserts that Zisa compelled Plaintiff's urine specimen to conduct a drug test illegally and without reasonable suspicion. (Am. Compl. ¶ 15; *see* Pl.'s Opp'n to Zisa's Br. 2.) Plaintiff claims that due to the illegal procurement of his specimen, his "personal and professional reputation has been damaged beyond repair." (Am. Compl. ¶¶ 12, 34.) As discussed below, Zisa's Motion to dismiss Plaintiff's claims is based primarily on the argument that qualified immunity should apply to Zisa in these circumstances.[5]

---

[5] The Court has reviewed the record before it and notes that as Complaint and Amended Complaint relied on documents that the Plaintiff obviously is on notice of, the Court will refer to them herein without conversion to a motion for summary judgment pursuant to 12(b)(6). *See In re Rockefeller Ctr Properties, Inc. Sec. Litig.*, 184 F.3d 280 (3d Cir. 1999).

*Qualified Immunity*

Defendant Zisa argues that he is shielded from liability arising from the urine test based on the doctrine of "qualified immunity." "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz,* 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)). It applies to the "discretionary functions" of government officials whose actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 475 U.S. 800, 818 (1982). This protection is "effectively lost if a case is erroneously permitted to go to trial." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (stressing the importance of resolving immunity early in litigation).

The purpose of qualified immunity is to hold public officials accountable where their power is used "irresponsibly," and to shield them from "harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231 (2009) (internal citation omitted). It is meant to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Entitlement to qualified immunity involves a two-part test. First, the court must determine whether the "facts alleged show the officer's conduct violated a constitutional right[.]"[6] *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the court must ask whether the right was "clearly established."[7] *Id.* A government official's conduct violates "clearly established" laws when at the time of the challenged conduct, the right is

---

[6] This inquiry must be "[t]aken in the light most favorable to the party asserting the injury." *Saucier v. Katz*, 553 U.S. 194, 201 (2001).

[7] Although the importance of the two-step process was emphasized in *Saucier*, the Supreme Court concluded in *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) that the sequence of the inquiry "should no longer be regarded as mandatory." Though the *Saucier* protocol may often be "beneficial" or "appropriate," district court judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*; *see also Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2080 (2011).

sufficiently clear so that "every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (internal quotations omitted) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Essentially, the second part of the test is whether it would have been objectively reasonable for the official, or in this case the officer, to know that his actions were unlawful given the circumstances. *Kramer, et al. v. City of New Jersey, et al.*, No. 09-3767, 2010 WL 2326259, at *6 (D.N.J. June 3, 2010) ("*Kramer*").

Reasonableness is evaluated upon the "circumstances at that time." *See Rojas v. Cnty. of Passaic*, No. 04-3048, 2007 WL 773755, at *5 (D.N.J. Mar. 09, 2007) (citing *In re City of Phila. Litig.*, 49 F.3d 945, 961 n. 14 (3d Cir. 1994) and *Mellott v. Heemer*, 161 F.3d 117, 121 (3d Cir. 1998)). A government official is entitled to qualified immunity only if the Court can conclude, "based on the undisputed facts in the record, that [the officials] reasonably, although perhaps mistakenly, believed that their conduct was lawful in light of the clearly established law and the information known to them at the time of the alleged constitutional violation." *Peteete v. Asbury Park Police Dep't*, No. 09-1220, 2010 WL 5150171 *4 (D.N.J. Dec. 13, 2010) (citing *Mantz v. Chain*, 239 F. Supp. 2d 486, 496 (D.N.J. 2002)) (alterations in original). The burden of proving entitlement to qualified immunity rests with the defendant. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001); *see also Peteete*, 2010 WL 5150171, at *4.

The instant matter concerns whether reasonable suspicion existed and was relied upon with regard to police officers' use of illegal steroids. It is the New Jersey State

Attorney General's policy that urine specimens may be ordered by the chief executive officer of an agency if there is reasonable suspicion of illegal drug use.[8]

Defendant Zisa seeks to dismiss claims that he violated Plaintiff's rights under 42 U.S.C. § 1983[9] and N.J. Stat. Ann. § 10:6-2 by arguing that he is protected under qualified immunity.  As discussed above, the applicability of qualified immunity involves a two-part analysis.  The Court must determine 1) whether the facts alleged demonstrate that Zisa's conduct violated a constitutional right, and 2) if Zisa violated clearly-established law.

Lieutenant Riotta, who was under investigation, surreptitiously recorded conversations that implicated Plaintiff in possible illegal drug use.  (Def. Zisa's Br. 7.) These conversations were submitted to Salcedo on compact discs.  (*Id.* at Ex. G.)  Based on these recorded and transcribed conversations and the understanding that the drugs discussed were "banned under the Controlled Substances Act," 21 U.S.C. § 812(b)(3), Zisa argues that it was objectively reasonable for him to order the drug tests.  (*See* Def. Zisa's Br. 17-20.)[10]  In making this argument, Zisa relies heavily on *Kramer, et al.,* 2010 WL 2326259, at *6 ("As the chief of police, it was objectively reasonable for [him] to believe that he was obligated to ensure that his police officers were not medically unfit for duty.").

---

[8] ATTORNEY GENERAL, DIVISION OF CRIMINAL JUSTICE, STATE OF NEW JERSEY, ATTORNEY GENERAL'S LAW ENFORCEMENT DRUG TESTING POLICY § II(c)(1) (2001) (emphasis added), *available at* http://www.nj.gov/oag/dcj/agguide/drugtest2001.pdf.

[9] Pursuant to Section 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[10] Notably, the recorded conversations were about steroid use, but did not include a specific affirmative statement by Plaintiff regarding Plaintiff's possible drug use. (*See* Def. Zisa's Br., Ex. G.)

In *Kramer*, the Jersey City Police Department ("JCPD") chief of police decided to test seven JCPD officers for steroid use after an investigation conducted by the New York Police Department ("NYPD") returned evidence that fifty JCPD officers frequented a pharmacy that "'utilized foreign, federally unapproved components of drugs[.]'" *Id.* at *2. The officers were suspended from active duty for the use of <u>legally</u> prescribed steroids because the officers' steroid levels were "too high for them to be fit for unrestricted duty." (*Id.*) The District Court dismissed the officers' claims as to § 1983 on a motion to dismiss, finding the claims barred by qualified immunity. (*Id.* at *8.) On appeal of *Kramer*, the officers argued that the District Court's grant of qualified immunity was premature; however, the District Court's decision was affirmed by the Third Circuit in an unpublished decision on December 20, 2011. *Kramer, et al. v. City of Jersey City, et al.*, No. 10-2963, --Fed. Appx.-- (3d. Cir. Dec. 20, 2011) ("*Kramer II*").

As noted in *Kramer*, "[p]olice officers generally have a diminished expectation of privacy compared to other government employees." 2010 WL 2326259, at *4-5; *see also Policemen's Benevolent Ass'n*, 850 F.2d 133, 138 (1988) (upholding a random drug testing program for New Jersey township's police officers). Given the "safety-sensitive" positions of police officers, it is necessary to balance their individual expectations of privacy with compelling Government's interests to determine if intrusion is reasonable in light of the Fourth Amendment (against unreasonable searches and seizures). *See Kramer*, 2010 WL 2326259 *4. There are compelling reasons to maintain this position as "the public should not bear the risk that employees who may suffer from impaired perception and judgment will be promoted to positions where they may need to employ deadly force." *Nat'l Treasury Employees Union, et al., v. Von Raab*, 489 U.S. 656, 671

(1989) (upholding the random drug testing of customs officers dealing with illegal drugs who carry firearms).  As in the instant matter, the search in *Kramer* was specifically targeted and needed only to be supported by "reasonable suspicion."  2010 WL 2326259 *5.

Plaintiff argues that there are factual disputes as to whether the "reasonable suspicion" for drug testing was determined by Defendant Zisa or the county prosecutor; however, he fails to articulate how this discrepancy, if it exists, would impact the ability of Chief Zisa to order a drug test upon "reasonable suspicion."  (*See* Am. Compl. ¶ 15; *see also* Pl.'s Opp'n to Zisa's Br. 7.)  Further, Plaintiff contends that the instant matter differs from *Kramer* in that "none of the Plaintiffs alleged that the police chief lied or fabricated any basis for ordering the drug tests performed."  (Pl.'s Opp'n to Zisa's Br. 7.)[11]  However, Plaintiff does not allege that the recordings were fabricated in any way. Whether Plaintiff was informed that the prosecutor ordered the drug test, as opposed to Zisa, does not detract from Zisa's authority to have the test performed based on reasonable suspicion.  The law enforcement policy is that the "[u]rine specimens shall not be ordered from an officer without the approval of the county prosecutor *or* the chief executive officer of the officer's agency."[12]

As noted in *Kramer*, factors to consider in determining whether the "reasonable suspicion" standard was met include: (1) the nature of the tip or information; (2) the reliability of the informant; (3) the degree of corroboration; and (4) other facts

---

[11] Plaintiff alleges that the drug test was "so ordered by defendant Zisa, and illegally carried out by Salcedo and Garcia, although the plaintiff was lied to and told that the test was ordered by the Bergen County Prosecutor himself."  (Am. Compl. ¶ 15.)

[12] ATTORNEY GENERAL, DIVISION OF CRIMINAL JUSTICE, STATE OF NEW JERSEY, ATTORNEY GENERAL'S LAW ENFORCEMENT DRUG TESTING POLICY § II(c)(1) (2001) (emphasis added), *available at* http://www.nj.gov/oag/dcj/agguide/drugtest2001.pdf.

contributing to suspicion or lack thereof.  2010 WL 2326259, at *5 (citing *Copeland v. Pa. Police Dep't.*, 840 F.2d 1139, 1144 (3d Cir. 1988)).  In this instance, the information concerned police officers' use of anabolic steroids.  Lieutenant Riotta, who was under investigation, had recorded conversations with Plaintiff and turned over the recordings to Salcedo during the course of the investigation.  The actual content of the recordings, as well as the fact that Riotta bothered to record the conversations, provided a measure of corroboration and indicated a level of credibility.  The circumstances and transcripts of the recordings were enough to satisfy the "reasonable suspicion" standard, which is not a high standard to meet.  The Court notes that the standard for "reasonable suspicion" is a lower standard of proof than probable cause.  *See generally National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665-66 (1989); (*See* Def. Salcedo's Br. 11.)  Here, the reasonable suspicion standard was met.  Zisa's did not violate Plaintiff's constitutional right by ordering that Plaintiff submit to a drug test.

Alternatively, even if the Court found it ambiguous as to whether or not a constitutional right was somehow violated, it was "objectively reasonable" for Zisa, the chief of police, to "believe he had an obligation to ensure that his police officers were not medically unfit for duty."  *Kramer*, 2010 WL 2326259 at *6; *see also Harris v. New Jersey*, No. 03-2002, 2008 WL 141503 * 8 (D.N.J. Jan. 14, 2008).  Under the circumstances, considering the recordings and  transcribed conversations, as well as the law enforcement policy, it was objectively reasonable for Zisa to order a drug test to

determine if an officer was using illegal or prohibited drugs, and not consider his actions unlawful or in violation of "clearly-established law."[13]

This qualified immunity analysis applies similarly for the NJCRA claim.[14]  *See* N.J. Stat. Ann. § 59:3-3 (2006); *New Jersey Transit PBA Local 304 v. New Jersey Transit Corp.*, 290 N.J.Super. 406, 433 (App. Div. 1996) (finding unannounced drug test did not violate the New Jersey Constitution); *Kirk v. City of Newark*, 109 N.J. 173, 179-81(1988) (discussing qualified immunity standard).  Zisa is entitled to qualified immunity as to Count III (violation of NJCRA) as well.[15]

Thus, even accepting all factual allegations as true, and construing the complaint in the light most favorable to the Plaintiff, the Plaintiff has not set forth claims in Counts I and III upon which he may be entitled to relief for violations of state and federal constitutional rights.  *See Phillips*, 515 F.3d at 231; *Iqbal*, 129 S. Ct. at 1949.  Therefore, the Court grants Defendant Zisa's motion to dismiss Counts I and III.

---

[13] Plaintiff also asserts that in *Kramer* there was no evidence that "plaintiffs had been exonerated at a later date or advised that the circumstances surrounding the test were false and suspicious."  (Pl.'s Opp'n to Zisa's Br. 8.)  However, Plaintiffs unsupported allegations do not adequately state a claim for a constitutional violation pursuant to Count I or III, particularly as it was objectively reasonable for Zisa to order the test.

[14] Plaintiff alleges violations of the Fourth Amendment (illegal search and seizure) and the NJCRA.  The NJCRA has been interpreted analogously to 42 U.S. C. 1983.  The NJCRA provides, in relevant part, that

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J. Stat. Ann. § 10:6-2(c).

[15] Plaintiff also does not specifically identify a violated constitutional provision and cannot establish a claim for a violation of state civil rights.

## II.     Motion to Dismiss by Salcedo

Salcedo presents argument to dismiss Counts I, III, and IV of Plaintiff's Complaint based on qualified immunity and insufficiency of the pleadings.

### *Qualified Immunity*

Defendant Salcedo seeks to dismiss claims that he violated Plaintiff's rights under 42 U.S.C. § 1983 and N.J. Stat. Ann. § 10:6-2 by arguing that he is protected under qualified immunity.  Salcedo argues that Plaintiff's urine test was conducted "pursuant to the order of Chief Zisa[,]" which was "supported by a finding of reasonable suspicion." (Def. Salcedo's Br. 10.)   In the alternative, he argues that even if any constitutional violations existed, he is entitled to qualified immunity because it was "reasonable for him to consider his actions consistent with the law."  (*Id.*)

In making his qualified immunity argument, like Zisa, Salcedo also relies upon *Kramer*.  2010 WL 2326259.  Additionally, Salcedo relies, in part, upon the *Harris* case. 2008 WL 141503.  In *Harris*, a police officer was subjected to a urine test after an anonymous telephone call to the State Police hotline claimed that someone of the officer's description was seen smoking marijuana.  *Id.* at *3.  The officer brought suit against the New Jersey State Police, his supervisors, investigators, and others, claiming numerous state and federal violations, including a violation of his Fourth Amendment rights pursuant to § 1983.  *Id.* at *1.  The *Harris* court held that the plaintiff failed to establish a constitutional violation; and, stated that even if there was a constitutional violation, the defendant officers who were assigned to investigate the anonymous complaint "acted reasonably by obtaining [p]laintiff's urine sample."   The Court explained its reasoning, stating,

> There has been no evidence presented that [d]efendants . . . were involved in the decision to obtain the sample or that they were doing anything other than following orders of their superiors. . . .   Moreover, no evidence has been presented that these two officers had a basis to find a lack of reasonable suspicion.

*Id.* at *8.  As even Salcedo intimates, the Internal Affairs investigation he was conducting at the time and the memorandum that he produced were the catalysts for Zisa to request the drug test.  (*See* Def. Salcedo's Br. 6-7.)  However, given that Salcedo's position is that of a Captain in the Internal Affairs Unit, it is clear that he was performing his job by forwarding the fruits of his investigation to Chief Zisa.

Salcedo claims that "[o]nce Chief Zisa determined that there [sic] reasonable suspicion and ordered that the drug test be conducted, it was more than reasonable that Captain Salcedo followed that order."  (*Id.* at 16.)[16]  This Court agrees and finds that dismissal of Counts I and III based on qualified immunity against Salcedo is appropriate.

<u>Count IV (Conspiracy)</u>

Salcedo's argues that Plaintiff's claim for conspiracy (Count IV) should be dismissed based upon insufficiency of the pleading, even if Salcedo was not entitled to qualified immunity.  While this Court finds that Salcedo is entitled to qualified immunity as to Count IV, it also finds that the Plaintiff has not sufficiently set forth a basis for the conspiracy claim.

Plaintiff alleges that Defendants "conspired to violate [his] statutory state and federal civil rights by acting in concert to ignore his requests for a thorough investigation and together creating an environment of intimidation and coercion, including the use of

---

[16] Plaintiff has also stated that Salcedo collected the urine sample and "made deliberately false statements" about Plaintiff's results. (Am. Compl.; Pl.'s Opp'n to Zisa's Br. 1.)  However, Salcedo's collection was at the order of Zisa, and as discussed, qualified immunity applies.  Salcedo's alleged statements do not implicate a constitutional violation.

verbal and [sic] abuse." (Am. Compl. ¶¶ 47-48.) Plaintiff also alleges that Defendants "conspired to illegally test[,]" "to lie to plaintiff about who ordered the test," and to "defame plaintiff by accusing him of a crime, both orally and in writing." (*Id.* ¶ 15.) Plaintiff brings this conspiracy claim pursuant to 42 U.S.C. § 1983 and N.J. Stat. Ann. § 10:6-2.[17] (Am. Compl. ¶ 48.)

"To properly state a § 1983 conspiracy claim, a plaintiff must allege that 'persons acting under color of state law conspired to deprive him of a federally protected right.'" *Novellino v. New Jersey Dep't of Corr. Mountainview Youth Corr. Facility*, No. 10–4542, 2011 WL 3418201, at *6 (D.N.J. Aug. 3, 2011) (quoting *Perano v. Twp. of Tilden*, No. 10–2393, 2011 WL 1388381, at *4 (3d Cir. Apr. 13, 2011)). The New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-2, was modeled after § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitution. *Celestine v. Foley*, No. 10-1775, 2010 WL 5186145, at *6 (D.N.J. Dec. 14, 2010).

At the motion to dismiss stage, the allegations of conspiracy "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009). "[A] plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (stating that this holding for pleading requirements "remains good law following *Twombly* and *Iqbal*"). In other words, there must be a "meeting of the minds." *See Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 205 (3d Cir. 2008).

---

[17] As the Court has determined that the counts against Garcia will be dismissed at this time, and since Zisa has not moved to dismiss Plaintiff's conspiracy claim, Salcedo is the only Individual Defendant who seeks to specifically dismiss Count IV. Therefore, only Salcedo's liability for conspiracy is discussed in this section.

Based on the facts alleged, construed under the motion to dismiss standard, Count IV has been improperly pled against Salcedo.  There is no suggestion that there was a meeting of the minds from which an agreement could be inferred.  Plaintiff's assertions of conspiracy to violate state and federal civil rights are not supported by the factual allegations in the Amended Complaint, but rather are set forth with "conclusory" statements of "conspiratorial goal[s]."  *See Ashcroft*, 129 S. Ct. at 1949 (2009) (*citing* Twombly, 550 U.S. at 555); (Am. Compl. ¶19.).  Thus, Salcedo's Motion as to the dismissal of Count IV is granted.

## III.   Motion to Dismiss by Garcia

Garcia is entitled to the protection of qualified immunity regarding Counts I, III, and IV for the reasons discussed above with respect to Zisa and Salcedo.  This  Court also finds that the counts against Garcia are not sufficiently pled.  Plaintiff merely alleges Garcia's presence while Plaintiff was being tested for steroid use and while the results were announced as positive.  (*See* Am. Compl. ¶ 15; Pl.'s Opp'n to Zisa's Br. 1.)  From this, he has concluded that Garcia has acted with Zisa and Salcedo to "conspire[] to illegally test [Plaintiff], lie about the Bergen County Prosecutor's involvement, and defame [Plaintiff's] good name and reputation."  (Pl.'s Opp'n to Zisa's Br. 1.)  Plaintiff makes general statements regarding Garcia's role in obtaining the drug sample, but does not provide specific factual allegations of actions taken by Garcia.

Plaintiff does not claim that Garcia ordered the drug test or would have any reason to think or know that Zisa's order for the drug test might not have been based on "reasonable suspicion." Notably, Plaintiff does not even include any specific factual assertion that Garcia made any defamatory statements regarding Plaintiff.  In fact, the

record indicates that although Garcia was present when Plaintiff received his results, Garcia did not even comment on the results.  (Def. Zisa's Br., Ex. A. at 3.)  Overall, Plaintiff's assertions against Garcia are not supported by the factual allegations in the Amended Complaint, but rather are set forth with conclusory statements to that effect. *See Ashcroft*, 129 S. Ct. at 1949 (2009) (*citing Twombly*, 550 U.S. at 555).  Thus, Garcia's Motion to dismiss all counts is granted.

### IV.    Motion to Dismiss by City of Hackensack

The City moved for judgment on the pleadings, or in the alternative for summary judgment.[18]  This Court declines to treat the City's Motion as one for summary judgment at this time, and will continue its analysis based on the standard for Federal Rule of Civil Procedure 12(c), for judgment on the pleadings.

As Zisa, Salcedo, and Garcia are entitled to qualified immunity as articulated above, and for the reasons stated with respect to the adequacy of the pleading for conspiracy, Count IV against the City will be dismissed.[19]

As to Count I, a municipality is subject to § 1983 liability only when its customs or policies, or failure to train employees cause the plaintiff to sustain injury.  *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S.658, 694 (1978).  To hold the City liable for a § 1983 violation, a plaintiff must establish that the "municipality supported the violation of rights alleged." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citing *Monell*, 436 U.S. at 692-95).  Additionally, a municipality is only liable when

---

[18] Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[19] Plaintiff has not asserted a NJCRA claim (Count III) against the City.  (*See generally* Compl.)

"execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Andrews v. City of Philadelphia*, 895 F.2d at 1480 (citing *Monell*, 436 U.S. at 694)).  Therefore, a government entity cannot be held liable under the *respondeat superior* doctrine. *Id.* at 1480.[20]

   A custom may be established when "though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Id.* (citing *Monell*, 436 U.S. at 690)).  Further, a city can be held liable under § 1983 for failure to properly train its employees.  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

   As discussed above, the Individual Defendants are entitled to qualified immunity. The City argues that Plaintiff cannot maintain the § 1983 claim against the City as these claims have been dismissed against the Individual Defendants and Plaintiff has not adequately pled a claim against the City regarding "municipal policy or custom." Plaintiff has not identified a specific policy or custom that led to a violation of his rights, but rather, included general allegations referring to the officers as "untrained" and the City permitting or tolerating certain "illegal conduct."   (Am. Compl. ¶¶ 40, 43.) Specifically for Count I, Plaintiff refers to "Defendants Zisa, Salcedo and Garcia's conduct evidenced sadistic states of mind, for which these defendants are individually liable and Defendant City of Hackensack is liable for tolerating such misconduct." (*Id.* ¶ 38.)  Plaintiff also alleges that the City "permitted and tolerated a pattern and practice of

---

[20] "There is no *respondeat superior* theory of municipal liability, so a city may not be held vicariously liable under § 1983 for the actions of its agents. Rather, a municipality may be held liable only if its policy or custom is the 'moving force' behind a constitutional violation." *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) (internal citations omitted).

untrained police personnel, illegal punishment and deprivation of constitutional guarantees by their employees." (*Id.* ¶ 31.) However, Plaintiff relies on the alleged single incident, rather than showing that a custom or practice was established that led to the violations he alleges.[21]  As such, Count I against the City will be dismissed.

The City also seeks to dismiss Count VIII (also referred to as Count H) for "malicious abuse of process, false arrest and false imprisonment."  Pursuant to the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:1-1, et seq., "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct."  N.J. Stat. Ann. § 59:2-10.  The "Tort Claims Act prohibits an action against a municipality when its municipal police officer falsely arrests or imprisons someone only if the officer was acting outside the scope of employment or acted with wil[l]ful misconduct." *Adams v. City of Camden*, 461 F.Supp.2d 263, 270 (D.N.J. 2006).

Because a claim of false arrest "do[es] not require that the officer had any particular state of mind, there is no per se ban on this action against the municipality. For false arrest, '[t]he essential thing is the constraint of the person' . . . '[t]he gist of false imprisonment is merely unlawful detention without more.'"  *Adams*, 461 F.Supp.2d at

---

[21] For example, Plaintiff asserts that the

> acts/omissions/systematic flaws/policies/procedures/customs of the defendants caused Zisa, Salcedo and Garcia to believe that their misconduct, abuse of power, conspiracy and denial of civil rights would not be aggressively, honestly, properly and thoroughly investigated, with obvious and foreseeable result that officers are more likely to utilize illegal means and investigations against plaintiff Al-Ayoubi and others in the future.

(Am. Compl. ¶ 33.)

270 (internal citation omitted); *see also Merman v. City of Camden*, No. 07-cv-3449, 2010 WL 2521422 *12 (D.N.J. 2010).

The Amended Complaint sets forth other bases for the Individual Defendants' conduct regarding false arrest and false imprisonment other than willful misconduct. *See* Fed. R. Civ. P. 8(d)(2).[22]   For example, Plaintiff refers to the Individual Defendants' "illegal and inexperienced conduct." (Am. Compl. ¶ 62.)  Plaintiff's pleadings indicate that the alleged conduct of the Individual Defendants could fall somewhere in the "zone between good faith and wil[l]ful misconduct." *Adams*, 461 F.Supp.2d at 271.   Thus, Plaintiff may maintain claims for false arrest and false imprisonment against the City.

However, Plaintiff cannot sustain a claim for malicious abuse of process.  Under New Jersey law, a cause of action for malicious abuse of process requires: "(1) an improper, illegal, and perverted use of the legal procedure, (2) an ulterior motive in initiating the legal process, and (3) some further act after the issuance of process representing the perversion of the legitimate use of the process." *Tucker v. New York Police Dept.*, No. 08-2156, 2008 WL 4935883 *14 (D.N.J. 2008) (citing *Simone v. Golden Nugget Hotel and Casino*, 844 F.2d 1031, 1036-1039 (3d Cir.1988)); *see also Earl v. Winne*, 34 N.J.Super. 605, 614-15 (Law Div. 1955).  In the instant matter, as ulterior motive and malice are pled and part of a claim for malicious abuse of process, Plaintiff cannot maintain such a cause of action against the City.

At this stage, the Court accepts Plaintiff's factual allegations as true, and construes the Amended Complaint in the light most favorable to the plaintiff.  In doing so, this Court finds that Plaintiff has sufficiently pled a plausible basis for which Plaintiff

---

[22] "If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2).

may be entitled to relief for false arrest and false imprisonment. *See Phillips*, 515 F.3d at 231.  Unfortunately, here Plaintiff has included all three claims ("malicious abuse of process, false arrest and false imprisonment") in one count against the City.  This Court will deem Plaintiff's Count VIII amended to exclude malicious abuse of process, but retain the claims of false arrest and false imprisonment against the City.

**CONCLUSION**

For the reasons set forth above, this Court **GRANTS** Zisa's Motion; **GRANTS** Salcedo's Motion; **GRANTS** Garcia's Motion; and **GRANTS IN PART AND DENIES IN PART** the City's Motion.

<u>s/Susan D. Wigenton, U.S.D.J.</u>

Orig:   Clerk
Cc:     Madeline Cox Arleo, U.S.M.J.
        Parties